UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERGEI FEDOROV,

          Plaintiff,
vs.

HYMAN LIPPITT, P.C., DOUGLAS HYMAN,
NORMAN LIPPITT, AND BRIAN O'KEEFE,

          Defendants.

Case No. 2:09-CV-14077-DPH-VMM

Hon. Denise Page Hood
Mag. Judge Virginia Morgan

---

**DEFENDANTS' RESPONSE TO MOTION TO COMPEL EMPLOYEE DEPOSITIONS**

    Mr. Fedorov seeks to compel the depositions of two current and one former Hyman Lippitt attorney. Defendants do not oppose the depositions of the two current attorneys upon the entry of an appropriate protective order, but ask the Court to deny the motion as it relates to the former attorney because that attorney never represented either Mr. Zada or Mr. Fedorov and has no information relevant to any of the matters at issue in this litigation. His sole relevance to this case appears to be that he was employed by Hyman Lippitt and is now employed by Hyman Lippitt's defense counsel.

    A.    **Collateral Litigation.**

    Mr. Fedorov uses his motion to compel to preview his opening statement to the Court by mischaracterizing litigation in which Hyman Lippitt represented Mr. Zada and litigation in which Hyman Lippitt was itself sued, in an effort to give color to facts that in truth have none. Defendants do not oppose the deposition of the attorney with knowledge of this irrelevant litigation, because she will support Defendants' position that Mr. Fedorov has no evidence that Hyman Lippitt was complicit in Mr. Zada's alleged Ponzi scheme.

1.  **The Aubrey Litigation.**

Mr. Fedorov seeks to depose Julie Kosovec, a litigation partner at Hyman Lippitt. Ms. Kosovec (with Mr. Lippitt) represented Mr. Zada in two suits brought by members of the Aubrey family. The suits were eventually consolidated into one suit that was litigated in the Wayne County Circuit Court ("Aubrey Litigation"). The Aubrey Litigation involved a dispute as to whether the money the members of the Aubrey family gave to Mr. Zada were loans (as Mr. Zada contended) or investments (as Mr. Aubrey asserted). Mr. Aubrey alleged in his complaint that Mr. Zada indicated he was going to invest the money by "trading in international securities." *See* Aubrey Complaint, attached as Exhibit 1 to Motion to Compel, at ¶ 32(c).

Mr. Zada never disputed that he owed the Aubrey's money. He contended that the money was loaned to him and supported his position with evidence of interest bearing notes he executed in favor of the Aubreys for the amounts they gave him. Notes are, as the court is well aware, evidence of a debt, not an investment. Moreover, Mr. Aubrey testified in his deposition that the money he placed with Mr. Zada was not "at risk" and that Mr. Zada had an absolute obligation to repay it. *See* Âubrey Dep. at p. 140, attached hereto as Exhibit A. In other words, the evidence in the case clearly supported Mr. Zada's position that the money was loaned to him, not placed with him for investment through "trading in international securities."

Both parties accepted the case evaluation award that was for the approximate amount Mr. Zada admitted he owed the plaintiff and Mr. Zada paid the case evaluation award in full. If a judgment was entered, it should not have been under the Michigan Court Rules. MCR 2.403 (M)(1).

In the course of the Aubrey Litigation, counsel for Aubreys violated the Michigan Court Rules by issuing subpoenas for Mr. Zada's bank records without providing notice to counsel for

928314 / 13643-0001                                  2

Mr. Zada. Mr. Lippitt and Ms. Kosovec moved for a protective order and the court granted their motion. At the hearing on the motion, counsel for the Aubreys attempted to defend his indisputably illegal discovery tactic by arguing, among other things, "Authorities should be reviewing [Mr. Zada's] activities. He is going to the appearance of pure Ponzi. It is the clear appearance of having talked people out of their life savings in order to give him the money." *See* Transcript of hearing at p. 9, attached as Exhibit 2 to Motion to Compel. The attorney who made this argument was Lawrence S. Charfoos, a lawyer-businessman who has his personal bankruptcy petition dismissed as a bad faith filing on the ground that he transferred funds in violation of court orders and secured loans from banks based on misrepresentations. *Michigan National Bank v. Charfoos (In re Charfoos)*, 979 F. 2d 390 (6th Cir. 1992). Further, Mr. Charfoos's "accusation" against Mr. Zada was made in an effort to excuse Mr. Charfoos's own improper conduct in attempting to secure bank records without notice to Mr. Zada.

Despite the dubious source and context of this "accusation," **Mr. Fedorov's case against Hyman Lippitt and its attorneys is premised on their alleged obligation to disclose Mr. Charfoos's comment to Mr. Fedorov.** There is not an attorney in the country who would find Mr. Charfoos's comment to be credible; both the source and the context of the accusation indicate a distinct lack of credibility. Upon the entry of an appropriate protective order concerning Mr. Zada's privileged communications (as discussed below), Ms. Kosovec will gladly testify about the Aubrey Litigation and Mr. Charfoos's baseless comment.

    2.    **The Tocco Litigation.**

The Tocco case is even less relevant. The case started as an action between a grandfather and grandson over the family's effort to transfer the family's cemetery business to the grandson. Grandson retained Hyman Lippitt to represent him and the cemetery in the transaction. John

Gonway was the corporate attorney at Hyman Lippitt who handled the transaction. Mr. Gonway recommended and believed that the Grandfather had separate counsel. Mr. Gonway presented Grandfather with a letter at the closing of the transaction that confirmed his understanding. *See* Order Granting Motion for Preliminary Injunction, attached as Exhibit 4 to Motion to Compel, at pp. 3 – 4. The court found that Mr. Gonway handled the transaction inappropriately and should not have given Grandfather the letter at the closing when Grandfather did not have counsel present. None of the Defendant attorneys was involved with the transaction nor was Mr. Zada a party to that transaction.

Mr. Zada was on the board of the cemetery business and both Grandfather and Grandson were family friends of Mr. Zada. *See* Tocco Complaint attached as Exhibit 3 to Motion to Compel, at ¶¶ 44, 46. After Grandfather filed suit against Grandson over the transfer of the cemetery business, Grandson loaned Mr. Zada $600,000 using funds in which Grandfather contended he had a security interest. *See* Tocco Complaint at ¶¶ 49 – 51. The loans were unsecured and carried an interest rate Grandfather alleged was below market. *See* Tocco Complaint at ¶¶ 52. Grandfather did not allege that the loans were "private foreign investments," that Mr. Zada made any misrepresentation to Grandfather or anyone else to secure the loans, or that Mr. Zada held himself out as an expert in foreign investments; rather, Grandfather merely contended that Mr. Zada knew that Grandfather asserted a security interest in the funds Mr. Zada borrowed and therefore Mr. Zada should not have borrowed them. *See* Tocco Complaint at Counts IX and X, p. 19.

In the course of the litigation, the parties had a dispute about where Mr. Zada's deposition should proceed, the scope of financial records he had to produce and whether he should sit for his deposition while motions to dismiss were pending and while the parties were

discussing settlement. Mr. Zada's deposition was not, as Mr. Fedorov suggest, the only matter at issue in the litigation at the time of the settlement and was not the reason why the case settled. Moreover, at the time the parties were fighting over whether Mr. Zada should appear for his deposition, Hyman Lippitt was represented by outside counsel and did not appear at any of the hearings on the discovery issues.

In other words, none of the Defendant attorneys was a party to the Tocco case or involved in the underlying transaction and Hyman Lippitt did not represent Mr. Zada in the Tocco litigation. Ms. Kosovec represented Hyman Lippitt in that dispute for a short period and she was replaced by Collins Einhorn. Her deposition testimony will completely undermine Mr. Fedorov's contention that Hyman Lippitt had an obligation to "disclose" the details of the Tocco litigation to him.

### B. A protective order is necessary to protect Mr. Zada's privileged communications before the Kosovoc and Flaggman depositions may proceed.

In order to fairly defend itself against Mr. Fedorov's outlandish allegation that it was complicit in Mr. Zada's alleged Ponzi scheme, Hyman Lippitt and its attorneys will need to reveal communications they had with Mr. Zada that are protected by Mr. Zada's attorney client privilege. This issue was discussed by the parties at the initial Rule 26 conference. Both Ms. Kosovoc and Mr. Flaggman represented Mr. Zada and had communications with him that support the Defendants' defense to Mr. Fedorov's claims and, in order for their depositions to proceed, those communications must be protected in order to minimize any harm to Mr. Zada by their disclosure.

Specifically, under Michigan Rule of Professional Conduct 1.6, an attorney may reveal privileged communications with a client in order to defend himself against a third party's accusations of misconduct. The comments to that rule caution:

> *Where practicable and not prejudicial to the lawyer's ability to establish a defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.*

The protective order currently in place would not cover these communications because it applies only to the parties' financial matters. *See* Docket No. 24 at ¶ 1. Defendants have has sent a copy of the protective order to counsel for Mr. Zada and sought his approval of its terms, as modified to include privileged communications with Mr. Zada. Once a protective order provides Mr. Zada with adequate protection, Hyman Lippitt and its attorneys (including Ms. Kosovoc and Mr. Flaggman) will be able to discuss these privileged communications in their depositions.

The entry of the protective order concerning Mr. Zada's communications is necessary for the depositions of Mr. Flaggman and Ms. Kosovoc to proceed if they are to reveal what Hyman Lippitt knew and did not know about Mr. Zada's activities and alleged activities. Thus, the motion to compel their depositions must be denied without prejudice until a suitable protective order is entered.

C.   **Timing of depositions.**

In addition to the need for a protective order that would permit Mr. Flaggman and Ms. Kosovoc to testify as to their communications with Mr. Zada, Defendants should not have to produce their employees for deposition until Mr. Fedorov answers discovery that was served on him in December. Mr. Fedorov has refused to provide basic information relating to his claims (including such elementary matters such as a list of Defendants' actions he contends are culpable and the documents he has to support his contention) under the guise that he has no "personal

knowledge" or such matters and that documents gathered from public records are confidential work product. *See* Docket No. 31. By not producing any relevant information concerning the scope of his claims and insisting that Defendants nonetheless make their employees available for deposition, Mr. Fedorov is engaging in the very conduct of which he wrongfully accuses Defendants, *i.e.* playing games in an effort to control the order of discovery. His litigation tactics stymied Defendants' ability to prepare their employees for deposition or to take any of the third-party depositions Defendants' noticed.

Moreover, unlike the defendant in *Volkswagen A.G. v. Dorling Kindersley Publishing, Inc., 2006 WL 2357543,* (E.D. Mich 2006), Defendants here moved to compel answers to discovery; they did not just insist that discovery happen on their timeframe. Defendants first sought information from Mr. Fedorov in December 2009, at the earliest possible moment and Mr. Fedorov has done nothing but stall and delay. Simply put, before it produces its employees for deposition, Hyman Lippitt is entitled to know what Mr. Fedorov contends it did wrong.

D. **Mr. Gonway should not be deposed.**

Mr. Fedorov also seeks to depose John Gonway, a former employee of Hyman Lippitt who now a shareholder of Defendants' counsel, on the basis that Mr. Gonway was a defendant in the Tocco case. Apparently, Mr. Gonway is supposed to have knowledge of "the litigation and settlement of the *Tocco* litigation" and information "regarding the firm's practice of tendering conflict-of-waiver [sic] documents to clients on the day in which transaction documents are to be signed." *See* Motion to Compel at p. 9.

Mr. Gonway never represented either Mr. Zada or Mr. Fedorov. *See* Gonway Affidavit, attached as Exhibit B at ¶¶3, 4. He never had any substantive communications with Mr. Zada about the *Tocco* case or any other matter. *See* Gonway Aff. at ¶3. At the time the *Tocco* case

was filed, he was no longer even an employee of Hyman Lippitt. He, Mr. Zada and Hyman Lippitt each had separate counsel in that case and did not coordinate their respective defenses. Mr. Gonway and Hyman Lippitt paid a grand total of $50,000 to settle the *Tocco* case, the cost of further defending the case. Mr. Gonway did not even appear at the hearing (through counsel or otherwise) where the settlement of the entire case (including Mr. Zada) was placed on the record. *See* Transcript of settlement conference, attached as Exhibit C.

In other words, Mr. Gonway does not have any relevant evidence and his deposition is not likely to lead to the discovery of admissible evidence. The motion to compel should be denied as it relates to him.

E.   **Conclusion.**

Defendants never objected to producing either Ms. Kosovoc or Mr. Flaggman for their depositions and agree that their depositions will produce relevant information that will shed bright and clarifying light on Mr. Fedorov's claims against Hyman Lippitt. However, because their testimony will include confidential communications they had with Mr. Zada, the Michigan Rules of Professional Conduct require the entry of a protective order to minimize the harm to Mr. Zada of any disclosure of confidential information. Their depositions should not proceed until this issue is adequately addressed.

Finally, Mr. Gonway has no relevant information. He never represented either Mr. Zada or Mr. Fedorov and there is no legitimate reason why he should be made to sit for a deposition in this case.

Respectfully submitted,

MADDIN, HAUSER, WARTELL
ROTH & HELLER, P.C.

/s/ *Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Harvey R. Heller (P27351)
Steven M. Wolock (P38497)
Attorneys for Defendants
28400 Northwestern Hwy, 3rd Floor
Southfield, MI 48034
(248) 359-7520

Dated: March 26, 2010

---

### CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2010, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: all counsel of record.

/s/ *Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Attorney for Defendant
28400 Northwestern Highway, 3rd Floor
Southfield, MI 48034
(248) 359-7520

---