UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERGEI FEDOROV,

        Plaintiff,                        Case Number: 09-14077

v.                                            DENISE PAGE HOOD
                                                UNITED STATES DISTRICT COURT

HYMAN LIPPITT, P.C., DOUGLAS A.
HYMAN, NORMAN L. LIPPITT, and BRIAN      VIRGINIA M. MORGAN
D. O'KEEFE,                                   UNITED STATES MAGISTRATE JUDGE

        Defendants.

_____ /

## REPORT AND RECOMMENDATION DENYING DEFENDANTS' MOTION TO DISMISS (Doc. No. 14)

In this diversity lawsuit, Plaintiff Sergei Fedorov ("plaintiff") alleges that Defendants Hyman Lippitt, P.C., Douglas A. Hyman, Normal L. Lippitt, and Brian D. O'Keefe (collectively "Hyman Lippitt") committed legal malpractice and breached their fiduciary duty to him when they did not stop him from lending money to and investing money with Joseph Zada, an acquaintance of plaintiff and a client of Hyman Lippitt. Presently before the court is Hyman Lippitt's motion to dismiss. (Doc. No. 14). The motion has been fully briefed, and the court heard oral argument on March 16, 2010. For the reasons discussed below, the court recommends that Defendants' motion to dismiss be **DENIED**.

## I. Background

In 2001, Joseph Zada ("Zada"), a client of Hyman Lippitt and a friend of plaintiff's, introduced plaintiff to the defendant law firm and plaintiff retained Hyman Lippitt shortly thereafter.

1

(Compl. ¶¶ 41-43). Hyman Lippitt represented plaintiff in a variety of matters including: "contracts, real estate, tax, estate planning, legal residency, charity, litigation, wire transfers of duns, and even routinely paying bills on his behalf." (Compl. ¶ 45). Plaintiff alleges that Hyman Lippitt had its own bill sent to its offices and paid it with his money. (Compl. ¶ 60). On June 19, 2003, plaintiff executed a Durable Power of Attorney designating Hyman Lippitt "broad authority to perform acts and exercise powers with regard to Mr. Fedorov's property and affairs." (Compl. ¶ 52).

During Hyman Lippitt's representation of plaintiff and Zada, plaintiff "entrusted tens of millions of dollars to Mr. Zada." (Compl. ¶ 62). Beginning in 2003, after the Durable Power of Attorney was executed, defendant Brian O'Keefe authorized wire transfers for large amounts of money from plaintiff's bank accounts to Zada, and O'Keefe executed loan documents and forbearance agreements relating to the transfer of money to Zada on plaintiff's behalf. (Compl. ¶¶ 55-56). Plaintiff asserts that he gave the money to Zada to be invested in private, foreign investments. (Compl. ¶ 62). The money plaintiff "invested" with Zada is now missing. (Compl. ¶ 62).

Plaintiff further claims that while Hyman Lippitt represented him and Zada, and was in charge of his finances, Hyman Lippitt knew that: 1) plaintiff was transferring money to Zada, 2) Zada was not making private foreign investments, and 3) Zada was being sued for fraud by other people who had invested with him, but did not tell plaintiff. (Compl. ¶¶ 100-103). Plaintiff alleges that some of the money Zada obtained from him was used to satisfy judgments or settlements in lawsuits involving Zada's other investors. (Compl. ¶¶ 109, 116-117). Hyman Lippitt represented Zada in many of the other investors' lawsuits and was a co-defendant in at least one of the suits. (Compl. ¶¶ 107, 110, 123-132).

In 2009, apparently after plaintiff asked Zada for his money and Zada did not pay, Hyman Lippitt brokered a deal between plaintiff and Zada to settle plaintiff's claims against Zada. Hyman Lippitt prepared an agreement that required Zada to pay plaintiff $60 million to satisfy plaintiff's claims. (Compl. ¶ 81). The agreement provided that if Zada did not honor the settlement agreement, Zada consented to the "immediate entry of a judgment in favor of Fedorov and against Zada and/or the Zada Entities . . . in the customary form of a consent judgment. . ." (Doc. No. 19, Defs.' Mot. Ex. 1, Payment, Release, Standstill and Confidentiality Agreement [hereinafter Settlement Agreement] ¶ 3). Zada also agreed to waive all defenses to the entry of the consent judgment. *Id.* Hyman Lippitt represented both plaintiff and Zada in the preparation and execution of the settlement agreement and "Hyman Lippitt did not, and could not, obtain informed consent to or a waiver of the conflict from Mr. Fedorov with regard to the $60 Million Agreement." (Compl. ¶¶ 81, 85). On March 6, 2009, the parties executed the Settlement Agreement.

On July 23, 2009, plaintiff filed a lawsuit in Wayne County Circuit Court to enforce the Settlement Agreement. (Doc. No. 19, Defs.' Mot. Ex. 2, Complaint and Jury Demand). Plaintiff sued Zada, Zada Enterprises, LLC, Xandarius LLC, and Equest Properties, LLC, jointly and severally. *Id.* The complaint contained the following counts: breach of contract, fraud, silent fraud/fraudulent misrepresentation, statutory embezzlement or conversion, common law conversion, breach of fiduciary duty, civil conspiracy, and unjust enrichment. In addition to treble damages of $180,000,000, plaintiff asked the court to impose a constructive trust over the defendants' assets, order an accounting, and appoint a receiver. *Id.* at ¶¶ 3-7.

In the complaint, plaintiff accused Zada and the Zada entities of breaching the settlement agreement, causing plaintiff to suffer $60 million in damages. *Id.* at ¶¶ 31-35. Plaintiff also asserted

3

that Zada, "acting in concert with others," committed fraud, silent fraud, and conspired to defraud plaintiff, resulting in damages to plaintiff in excess of $60,000,000. *Id.* at ¶¶ 39-40, 55, 57, 63, 67-68, 84. Plaintiff also alleged that Zada, acting alone, embezzled and converted Fedorov's money for his own use and breached the fiduciary duty he owed Fedorov as an investment advisor. *Id.* at ¶¶ 70, 75, 79, 81.

Zada did not answer the complaint, and on August 28, 2009, the parties appeared before Wayne Circuit Court Judge Kathleen MacDonald on plaintiff's motion for default judgment. (Doc. No. 19, Defs.' Mot. Ex. 5, 8/28/09 Transcript [hereinafter Tr.]). Both parties were represented at the hearing; Hyman Lippitt did not represent either plaintiff or Zada at the hearing. (Tr. 4).

At the beginning of the hearing, Zada's attorney, Mr. Aloia, explained that he had filed a response to the motion for default judgment and moved to set aside the defaults entered in the case on the basis of good cause and an affidavit of meritorious defense. (Tr. 4). Judge MacDonald then asked Mr. Aloia why his affidavit of meritorious defense did not "raise anything about the agreement wherein Mr. Zada states he shall not in any manner attempt to defend or interfere with the entry nor shall take any appeal on any judgments entered against him." (Tr. 4). Mr. Aloia argued in response that Zada had agreed not to interfere in the entry of a judgment on the breach of contract claim, but not the "myriad of claims" that plaintiff brought against Zada, which Mr. Aloia claimed were "waived by virtue of an integration clause in the settlement agreement . . . ." (Tr. 5). Judge MacDonald asked Mr. Aloia to answer her question about whether or not Zada agree not to defend the lawsuit, to which Mr. Aloia replied that as to the breach of contract counts, that was true, but "as to the remaining counts of fraud and breach of fiduciary duties, those are claims which no relief can be granted by virtue of the settlement agreement." (Tr. 5). Judge MacDonald then stated,

4

"I don't think so counsel." (Tr. 5).

Plaintiff's counsel, Mr. Alter, then argued that Zada had not shown good cause to set aside the default and that the waiver in the settlement was inapplicable because Zada had not satisfied the terms of the Settlement Agreement by paying Fedorov $60,000,000. (Tr. 8).

Judge MacDonald made the following ruling:

> I'm not setting aside this default. You have not demonstrated good cause. He was served. He was served timely, and he didn't answer. In addition to that, he has no meritorious defense based on this payment release, confidentiality agreement. End of discussion.

(Tr. 9).

The court entered an order granting plaintiff's motion for default judgment and ordering Zada and the Zada enterprises to pay plaintiff $60,000,000 plus judgment interest. (Doc. No. 19, Defs.' Mot. Ex. 4, Default Judgment Against Defendants). The order specified that the default judgment resolved "the last pending claim and closes the case." *Id.* It is not clear from the record the amount plaintiff has been able to collect from Zada, if any.

On October 15, 2009, plaintiff filed a three-count complaint in this court. (Doc. No. 1). In the complaint, plaintiff alleges that: 1) Hyman Lippitt, Hyman, and Lippitt aided and abetted Zada's breach of fiduciary duty; 2) Hyman Lippitt, Lippitt, and O'Keefe breached their fiduciary duty to Fedorov; and 3) Hyman Lippitt, Lippitt, and O'Keefe committed legal malpractice. (Compl. ¶¶ 141, 147, 153). Plaintiff alleges that the breaches of fiduciary duty and legal malpractice cause him to suffer tens of millions of dollars in damages. (Compl. ¶¶ 144, 149, 155).

In lieu of filing an answer, Hyman Lippitt filed the instant motion to dismiss on December 2, 2009. (Doc. No. 14). Plaintiff filed a response to the motion to dismiss on January 13, 2010, and Hyman Lippitt filed a reply brief on January 28, 2010. (Doc. Nos. 19, 20). On February 2, 2010,

5

the Honorable Denise Page Hood referred the motion to dismiss to this court for a hearing a determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Doc. No. 21). The court heard oral argument on March 16, 2010.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 545 (2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## III. Analysis

### A. Mich. Comp. Laws § 600.2957(1) and § 600.6304: Allocation of Fault

Hyman Lippitt argues that where the plaintiff has "already allocated 100% of the fault for an injury to a third-party, the plaintiff is precluded from bringing a subsequent action against additional tortfeasors for the same loss." (Doc. No. 14, Defs.' Mot. 15). Hyman Lippitt contends that because plaintiff secured a judgment against Zada and Zada enterprises for $60 million, plaintiff allocated his damages for the underlying fraud to Zada and Zada enterprises, leaving no fault to be allocated to Hyman Lippitt. *Id.*

Plaintiff responds by first raising a procedural issue: whether the issue of allocation of fault is properly before this court when Hyman Lippitt has not filed a notice of non-party fault, as required by Michigan Court Rule 2.112(K). (Doc. No. 19, Pl.'s Resp. 9-10). Plaintiff also argues that until Hyman Lippitt files a notice of non-party fault, the issue of whether Mich. Comp. Laws § 600.2957(1) applies to legal malpractice and breach of fiduciary duty claims is not ripe for consideration. *Id.* at 13. Plaintiff further argues that Hyman Lippitt's motion to dismiss should be denied because it is substantively defective. *Id.* at 15. Plaintiff contends that the Wayne Circuit Court judgment did not allocate fault, but was in fact a breach of contract judgment, and the judgment did not assess all liability to Zada and Zada enterprises. *Id.* at 16.

The parties procedural and substantive arguments are premised on two Michigan statutes, Mich. Comp. Laws § 600.2957(1) and § 600.6304, and a Michigan court rule, Mich. Ct. R. 2.112(K). The two statutes came out of Michigan's tort reform legislation, which abolished joint and several liability and replaced it with "fair share liability." *Smiley v. Corrigan*, 248 Mich. App. 51, 55 (2002).

Mich. Comp. Laws § 600.2957(1) provides:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

Mich. Comp. Laws § 600.6304 provides, in relevant part:

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or,

if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

The relevant Michigan court rule, Mich. Ct. R. 2.112(K), governs the substance and timing of the notice of non-party fault:

(K) Fault of Nonparties; Notice.

(1) Applicability. This subrule applies to actions based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death to which MCL 600.2957 and MCL 600.6304, as amended by 1995 PA 249, apply.

(2) Notice Requirement. Notwithstanding MCL 600.6304, the trier of fact shall not assess the fault of a nonparty unless notice has been given as provided in this subrule.

(3) Notice.

(a) A party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault. A notice filed by one party identifying a particular nonparty serves as notice by all parties as to that nonparty.

(b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

© The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

The court will first address plaintiff's procedural argument, which is that this court cannot consider the issue of whether fault has been allocated until Hyman Lippitt files a notice of non-party fault, pursuant to Mich. Ct. R. 2.112(K), and plaintiff has the opportunity to respond to the notice.

(Doc. No. 19, Pl.'s Resp. 9-10). In Hyman Lippitt's reply brief, it argues that Mich. Ct. R. 2.112(K) is a state court of procedure that does not apply to actions pending in federal court. (Doc. No. 20, Defs.' Reply 4). Hyman Lippitt further argues that the court rule is "utterly irrelevant to Defendants' argument that Fedorov cannot allocate the entire fault for his injuries against Zada in one case and then attempt to allocate fault for those damages injuries [sic] against Defendants in this case." *Id.*

This court observes that, despite Hyman Lippitt's assertion that Mich. Ct. R. 2.112(K) does not apply to this proceeding, it filed a notice of non-party fault on March 2, 2010. (Doc. No. 26, Notice of Non-Party Fault). Plaintiff subsequently filed a motion to strike the notice of non-party fault. (Doc. No. 30, Motion to Strike Notice of Non-Party Fault). That motion has been scheduled to be heard by this court.

Hyman Lippitt's filing of the notice of non-party fault indicates that it has abandoned its argument that the court rule does not apply to this proceeding. However, even if that was not Hyman Lippitt's intent in filing the notice, the court holds that Mich. Ct. R. 2.112(K) is applicable in federal diversity actions premised on Michigan state tort claims. A diversity lawsuit asserting a tort claim under Michigan law requires compliance with the notice provision in Mich. Ct. R. 2.112(K). *Greenwich Ins. Co. v. Hogan*, 351 F. Supp.2d 736, 739 (W.D. Mich. 2004). In *Greenwich*, the court held that although Mich. Ct. R. 2.112(K) has been identified as a procedural rule, the rule was a necessary component of the Michigan statutory scheme of fair share liability. *Id.* Whether or not Hyman Lippitt's notice of non-party fault was filed correctly, from a substantive perspective, is irrelevant for the purposes of this motion to dismiss, which tests the factual strength of the complaint, and it is an issue for this court to decide after plaintiff's motion to strike the notice

9

of non-party fault is heard.

Turning now to the substantive issue of allocation of fault, presented in Hyman Lippitt's motion to dismiss, the court concludes that dismissing the lawsuit at this time would be premature. A 12(b)(6) motion tests the sufficiency of the complaint, and the court's review of a case in light of a 12(b)(6) motion is limited to determining whether the allegations in the complaint make out a plausible legal claim. *Iqbal*, 129 S.Ct. at 1950. In this case, Hyman Lippitt's motion to dismiss does not challenge the sufficiency of the facts pled but rather asks this court to declare, as a matter of law, that plaintiff is not entitled to seek recovery from Hyman Lippitt because plaintiff has already recovered a judgment against Zada and Zada enterprises. As such, Hyman Lippitt's motion seeks relief that this court cannot award on a 12(b)(6) motion to dismiss.

Hyman Lippitt's motion to dismiss would be better construed as a motion for summary judgment, even though the only evidence it asks the court to consider are public records, specifically the state court transcript and judgment, which this court may take judicial notice of in a motion to dismiss. However, because this case is in its infancy, Hyman Lippitt has not filed an answer and discovery has not been completed, the record is simply not sufficient for this court to determine whether plaintiff allocated all of the fault for the underlying fraud to Zada, or whether that issue is dispositive in this case. It is not apparent from the complaint that plaintiff seeks that same damages for the same fault allocated in the state court judgment. Plaintiff secured 60 million dollars in damages with the state court judgment; in this case, plaintiff seeks "tens of millions of dollars . . ." (Compl. ¶ 148). The complaint, the state court transcript, and the state court judgment, alone, do not conclusively establish that the alleged fault on the part of Hyman Lippitt was allocated to Zada and Zada enterprises. Moreover, it is not apparent from the face of the complaint that all of the

damages plaintiff suffered were allocated to Zada and Zada enterprises. In particular, damages for the legal malpractice claim may be separate and distinct from the fraud damages. The "tens of millions of dollars of damages plaintiff alleges in the complaint may represent damages that have not yet been litigated. The court is unable to determine with certainty that the fault has been allocated and plaintiff has secured the all the damages to which he is entitled. Without the benefit of a fully developed record, this court cannot determine whether the damages were completely allocated such that Hyman Lippitt would be entitled to judgment as a matter of law. Accordingly, the court recommends that Hyman Lippitt's motion to dismiss be denied on this ground.

### B. Judicial Estoppel

Hyman Lippitt also argues that plaintiff is judicially estopped from alleging that it is at fault for his injuries when plaintiff prevailed in a prior suit on the basis that third-parties were at fault for his injuries. (Doc. No. 14, Defs.' Mot. 17). Plaintiff responds that judicial estoppel does not apply in this case because the elements are not present. (Doc. No. 19, Pl.'s Resp. 19).

The Michigan Supreme Court has adopted the doctrine of judicial estoppel to prevent litigants from playing "fast and loose with the legal system" by asserting an inconsistent position in subsequent litigation. *Paschke v. Retool Industries*, 445 Mich. 502, 509 (1994). In applying judicial estoppel, the court must first determine if the party asserted a successful position in one proceeding, and second, if that party asserted a "wholly inconsistent" position in a subsequent proceeding. *Id.* Judicial estoppel is evaluated according to the prior success model, which provides that, "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true." *Id*. at 510.

As discussed above, this issue is technically outside the court's review in a 12(b)(6) motion because Hyman Lippitt is not testing the factual sufficiency of the complaint, but is looking for a legal determination that plaintiff asserted an inconsistent legal position in a prior lawsuit and prevailed. Nonetheless, the court concludes that, on the present record, plaintiff's posture in this lawsuit is not "wholly inconsistent" with the posture he took in the state court case. Plaintiff's position in state court was that Zada acted "in concert with others" to cause injury to plaintiff. In this case, plaintiff accuses the "others" that Zada allegedly acted in concert with. These positions are not wholly inconsistent but are complementary. In addition, the court is troubled by Hyman Lippitt's use of a default judgment entered based on a settlement agreement it drafted, representing both Zada and plaintiff in the drafting and execution of the agreement, as a sword to win dismissal before the facts of this matter are fleshed out and as a shield to avoid an accounting of its own liability in this matter, if any. Therefore, the court recommends that Hyman Lippitt's motion to dismiss be denied on this ground.

### IV. Conclusion

For any or all of the reasons discussed above, Hyman Lippitt's motion to dismiss should be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will

not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
United States Magistrate Judge

Date:  May 7, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 7, 2010, using the ECF system.

s/William Barkholz  
Case Manager