IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SERGEI FEDOROV,

                                              Hon. Denise Page Hood
                                              Case No. 09-14077

        Plaintiff,

vs.

HYMAN LIPPITT, P.C., DOUGLAS HYMAN,
NORMAN LIPPITT, AND BRIAN O'KEEFE,

        Defendants.

---

**DEFENDANTS HYMAN LIPPITT, P.C.'S, DOUGLAS HYMAN'S,
NORMAN LIPPITT'S AND BRIAN O'KEEFE'S RULE 72(B)(2) OBJECTIONS TO
MAGISTRATE MORGAN'S MAY 7, 2010 REPORT AND RECOMMENDATION**

      Hyman Lippitt, P.C., Douglas Hyman, Norman Lippitt and Brian O'Keefe ("Defendants") state as follows for their F.R.C.P. 72(B)(2) Objections to Magistrate Virginia Morgan's May 7, 2010 Report and Recommendation:

**OBJECTION**

      1.     Sergei Fedorov ("Fedorov") has sued Defendants for legal malpractice, aiding and abetting Joseph P. Zada ("Zada") in his breach of his fiduciary duty to Fedorov and breach of fiduciary duty arising from Defendants' alleged failure to stop Fedorov from lending money to and investing money with Zada, Fedorov's companion.

      2.     Defendants filed a Motion to Dismiss under Rule 12(b)(6) ("Motion"), arguing that as a matter of Michigan law, Fedorov cannot state a claim against Defendants for damages arising from Fedorov's dealings with Zada because Fedorov has already allocated all of the fault for these losses in a judgment he has against Zada.

      3.     In addition, Defendants' Motion argued that Fedorov obtained judgment against Zada for the full amount of his damages by representing to the Wayne County Circuit Court that

Zada was "the" proximate cause of his injuries. Fedorov is now judicially estopped from altering that position and alleging here that Defendants were "the" proximate cause of his loss.

4.  On February 2, 2010, the court referred the Motion to Magistrate Morgan. After hearing oral argument, on May 7, 2010, Magistrate Morgan issued a Report and Recommendation indicating that she believed the Motion should be denied because it was premature. Magistrate Morgan also found that Defendants waived their argument that a MCR 2.112(K) notice of non-party at fault was not a prerequisite for the defense because Defendants filed a notice of non-party at fault under MCR 2.112(K). Magistrate Morgan also found that judicial estoppel did not bar Fedorov's claims.

5.  As set forth more fully in the accompanying Brief in Support, the Court must reject Magistrate Morgan's Report and Recommendation because (a) the question of notice under MCR 2.112(K) is an irrelevant red-herring; (b) the issue of whether Mr. Fedorov has already allocated all of his losses to Mr. Zada is a question of fact that can be resolved on the papers submitted and; no further factual development is necessary; and (c) the doctrine of judicial estoppel bars Mr. Fedorov's claims.

WHERFORE, there being no just cause otherwise, Defendants respectfully ask that the Court reject Magistrate Morgan's May 7, 2010 Report and Recommendation.

# BRIEF IN SUPPORT

## QUESTIONS PRESENTED

I. Did Magistrate Morgan err when she determined that the question of whether MCL 600.2957(1) and MCL 600.6304 bar Mr. Fedorov's claims was premature and required additional discovery?

   Defendants answer: Yes.

II. Did Magistrate Morgan err when she determined that MCR 2.112(K) must be followed in federal courts exercising their diversity jurisdiction over cases applying Michigan law and that Defendants' waived their argument that MCR 2.112(K) is irrelevant to their Motion?

   Defendants answer: Yes.

III. Did Magistrate Morgan err when she determined that Fedorov's claims were not barred by the doctrine of judicial estoppel?

   Defendants answer: Yes.

# INDEX OF AUTHORITIES

**Cases**

*Dresser v. Cradle of Hope Adoption Center, Inc.*, 421 F. Supp. 2d 1024, 1028 (E.D. Mich. 2006) .................................................................................................................................... 13
*Edison v State of Tenn,* 510 F.3d 631, 634 (6th Cir. 2007) ........................................................ 8
*Ford Motor Co. v Public Service Comm.*, 221 Mich. App. 370, 382; 562 NW2d 224 (1997) ..... 15
*Grynberg v Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1279, n. 1 (10th Cir.2004) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003) (same) ............................................................................... 8
*Hensley Mfg. v. Propride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ............................................ 8
*Holton v. A+ Insurance Associates, Inc.*, 255 Mich App 318, 323 (2003) .............................. 9, 12
*In re Air Crash Disaster,* 86 F.3d 498, 516 (6th Cir. 1996) ...................................................... 14
*Jackson v City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999) ............................................... 8
*K-Mart Corp. v Logan*, unpublished opinion per curiam of the Court of Appeals, issued July 10, 2003, (Docket No. 232393) ............................................................................................ 11, 12
*Kurczi v. Eli Lilly and Co.*, 114 F.3d 1426, 1429 (6th Cir. 1997) ............................................. 10
*Levinson v United States*, 969 F.2d 260, 264 (CA 7, 1992) ..................................................... 15
*LULAC v Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) ............................................................. 8
*New England Health Care Employees Pension Fund v Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) .......................................................................................................................... 8
*Opland v Kiesgan,* 234 Mich. App. 352, 364; 594 N.W.2d 505 (1999) ................................... 15
*Paschke v Retool Industries*, 445 Mich. 502, 509-510; 519 NW2d 441 (1994) ....................... 15
*Robinson v City of Detroit,* 462 Mich 439, 462; 613 NW2d 307 (2000) ................................. 16
*Schaff v Stanhagen,* 937 F.2d 609 (6th Cir. 1991). *See also, Doss v Clearwater Title Co.,* 551 F.3d 634, 640 (7th Cir. 2008) ................................................................................................. 8
*Stanke v Varnum, Ritternig, Schmidt & Howlett, LLP*, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2008 (Docket No. 263446) ................................. 10, 11, 12
*Swierkiewicz v Sorema N.A.*, 534 U.S. 506; 122 S. Ct. 992; 152 L.Ed.2d 1 (2002)(emphasis added) ......................................................................................................................................... 8
*Whittiker v Deutsche Bank Nat. Trust,* 605 F. Supp. 914, 925 (N.D. Ohio 2009) ..................... 8

**Statutes**
MCL 600.2956 .............................................................................................................................. 12
MCL 600.2957(1) ..................................................................................................................... 3, 8, 9
MCL 600.6304 ....................................................................................................................... 3, 8, 9, 11
MCR 2.112(K) ..................................................................................................................... 2, 12, 13, 14
MCR 2.112(K)(3)(c) ..................................................................................................................... 14
MCR 2.112(K)(4) ......................................................................................................................... 14
MCR 7.215(I) ................................................................................................................................ 12

## INTRODUCTION

As argued in the Motion, Fedorov's case against ("Defendants") must be dismissed because Fedorov has already obtained a judgment against Zada, Zada Enterprises, LLC; Xandarius, LLC, a Florida limited liability company; and Equest Properties, LLC, (the "Zada Entities") in the amount of $60,152.926.41, plus costs and judgment interest. Michigan law provides that, by obtaining a judgment against the Zada and the Zada Entities, Fedorov allocated 100% of fault for his losses to those defendants and is precluded from re-allocating fault against the Defendants. There are no additional facts necessary to decide the issue. Defendants therefore ask that Magistrate Morgan's Report and Recommendation be overruled and that an order be entered dismissing this case with prejudice.

## STATEMENT OF FACTS

### A.     Fedorov Sues Zada and Related Zada Entities.

On July 23, 2009, Fedorov filed a complaint against Joseph Zada and various related entities in the Wayne County Circuit Court. *See* Fedorov's July 23, 2009 Complaint and Jury Demand ("Zada Complaint"), attached as Exhibit A. In the Zada Complaint, Fedorov asserted claims against Zada and the Zada Entities for, *inter alia*, fraud and breach of fiduciary duty. The Zada complaint also contained a claim for breach of contract that was premised on a March 6, 2009 agreement in which Zada and the Zada Entities agreed to pay Fedorov $60,000,000.00 by April 20, 2009 ("Agreement"), *Id.*, ¶ 23; *see also* Agreement as Exhibit A to Zada Complaint.

With respect to Fedorov's tort claims against Zada and the Zada Entities, Fedorov alleged that beginning in approximately 1998, "Zada, acting in concert with others, duped and defrauded Fedorov into believing, among other things, that [Zada] was a wealthy and highly successful investor, with whom Fedorov could 'invest' his earnings." *See* Exhibit A at ¶¶ 38, 67. Over an

eleven-year period, Zada purported to provide Fedorov with financial advice and accepted money for alleged investments that did not exist. *See* Exhibit A at ¶¶ 15, 16. For each of his claims against Zada and the Zada Entities, Fedorov alleged that he had suffered damages of $60,000,000.00 as a "***direct and proximate result***" of a breach of fiduciary duties by Zada and the Zada Entities. *Id.*, ¶¶ 32, 35, 55, 63, 72, 77, 82, 85, 91, 95, 100 (emphasis added). Specifically, paragraph 95 of the Zada Complaint which alleges that Fedorov:

> …only entrusted the entrusted assets to Zada and/or the Zada Entities ***because of*** the deliberate and intentional scheme ***of Zada***, acting in his individual capacity and with the Zada Entities and/or others, to unlawfully deceive Fedorov and defraud him with respect to the entrusted assets, among other things, and to conceal the entrusted assets from him through illegal, improper and inequitable conduct and other breaches of duties. (Emphasis added).

**B.    Fedorov Moves for a Default Judgment against Zada and the Zada Entities.**

On August 21, 2009, Fedorov filed a motion for a default judgment against Zada and the Zada Entities ("Default Motion") based upon the allegations in the Zada Complaint. *See* Fedorov's Motion for Default Judgment on Zada Complaint, attached as Exhibit B. In his Default Motion, Fedorov requested a judgment against Zada and the Zada Entities jointly and severally in the amount of $60,152,926.41, plus interest. Fedorov never moved to add Hyman Lippitt, P.C., Douglas Hyman, Norman Lippitt or Brian O'Keefe as party defendants.

Although he did not respond to the complaint, Zada objected to the entry of a default judgment, arguing that Fedorov released the fraud, breach of fiduciary duty and other tort claims in the Agreement and therefore judgment on those claims was improper. On August 28, 2009, the Wayne County Circuit Court, Honorable Kathleen MacDonald presiding, overruled Zada's objections and entered a default judgment against Zada and the Zada Entities in the amount of $60,152,926.41 plus judgment interest. The default judgment resolved "the last pending claim

and closed the case." *See* Judgment, attached as Exhibit C. Fedorov also moved for the appointment of a receiver over Zada's assets and the assets of the Zada Entities which was granted and ordered by the trial court on August 21, 2009.

### C. Fedorov Subsequently Files Suit Against Defendants for Over $60,000,000.00 Seeking a Second Judgment for the Same Harm and Loss Allegedly Caused by the Zada Entities.

Shortly after Fedorov obtained his Judgment against the Zada and the Zada Entities, Fedorov filed the instant Complaint against Defendants alleging they were liable for the money Fedorov gave to Zada because Defendants allegedly failed to disclose to Fedorov the "financial and litigation activities of its client, Mr. Zada." *See* Complaint against Hyman Lippitt, Docket No. 1 at ¶ 2. Indeed, in paragraphs 144, 149 and 155, *directly contrary to the allegations he asserted in his complaint against the Zada Entities,* Fedorov alleges that Defendants' actions and omissions caused Fedorov to suffer tens of millions of dollars of damage.

In other words, Fedorov is now seeking to hold Hyman Lippitt and three individual lawyers responsible for the $60,000,000.00 judgment he obtained against Zada and the Zada Entities. For the reasons stated below, Michigan law does not allow Fedorov to circumvent the tort allocation rules and otherwise violate the doctrine of judicial estoppel.

### ARGUMENT

#### I. Standard of Review.

When reviewing a motion to dismiss under Rule 12(b)(6), the court determines whether, if true, the facts alleged state a "claim that is plausible on its face." *Ashcroft v Iqbal,* 556 U.S. ____ (2009) (citations omitted). In ruling on a motion for failure to state a claim, the court "need not accept as true legal conclusions or unwarranted factual inferences and "legal conclusions masquerading as factual allegations will not suffice." *Edison v State of Tenn,* 510 F.3d 631, 634

(6th Cir. 2007). A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007), [emphasis in original].

Moreover, in deciding a motion to dismiss brought under Rule 12(b)(6), the court may "consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003), citing *Jackson v City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v Sorema N.A.,* 534 U.S. 506; 122 S. Ct. 992; 152 L.Ed.2d 1 (2002)(emphasis added). Taking judicial notice of materials filed with a court in other legal proceedings (like the Zada Complaint and other records from that litigation) does not convert a motion to dismiss into a motion for summary judgment. *Schaff v Stanhagen,* 937 F.2d 609 (6th Cir. 1991). *See also, Doss v Clearwater Title Co.,* 551 F.3d 634, 640 (7th Cir. 2008) (exception to F.R.C.P. 12(d) for documents over which court may take judicial notice); *Grynberg v Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1279, n. 1 (10th Cir.2004) (citing 27A *Fed. Proc., L.Ed.* § 62:520 (2003) (same); *Whittiker v Deutsche Bank Nat. Trust,* 605 F. Supp. 914, 925 (N.D. Ohio 2009). Finally, contrary to the Magistrate's Report and Recommendation, the Court can grant a motion to dismiss under Rule 12 when, as here, the undisputed facts "conclusively establish an affirmative defense." *Hensley Mfg. v. Propride, Inc.,* 579 F.3d 603, 613 (6th Cir. 2009).

II.  **Magistrate Morgan erred when she determined that the question of whether MCL 600.2957(1) and MCL 600.6304 bar Mr. Fedorov's claims was premature and required additional discovery.**

Defendants' Motion argued that the Complaint must be dismissed because Fedorov already allocated the entire fault for his losses to the Zada Defendants. The argument is premised on the 1995 tort reform statutes passed by the Michigan legislature, including the following:

MCL 600.2957(1) provides:

> *In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to Section 6304 [MCL 600.6304], in direct proportion to the person's percentage of fault. In accessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.*

MCL 600.6304 provides:

> *(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than one person, including third-party defendants and non-parties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:*
>
> *(a)   The total amount of each plaintiff's damages.*
>
> *(b)   The percentage of the total fault of all persons that contributed to the death or injury . . . .*

The statutory definition of "fault" for purposes of allocation includes "intentional conduct" that is a proximate cause of the alleged damages:

> *As used in this section "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warrant, or a breach of the legal duty, or any conduct that could give rise to the imposition of strict liability that is a proximate cause of damage sustained by a party.*

MCL 600.6304(8).

These statutes ("Tort Reform Statutes") apply to all tort cases filed under Michigan law. *Holton v. A+ Insurance Associates, Inc.*, 255 Mich App 318, 323 (2003). A federal court sitting

in diversity must follow *Holton* and apply the Tort Reform Statutes to all tort cases in which Michigan law applies, unless the federal court finds there is "convincing evidence" that the Michigan Supreme Court would decide the issue differently. *Kurczi v. Eli Lilly and Co.*, 114 F.3d 1426, 1429 (6th Cir. 1997), citations omitted. Magistrate Morgan did not cite any such evidence, because there is none. The Report and Recommendation raised a different issue, *i.e.* can the question of whether Fedorov has already allocated fault to Zada be decided on a Rule 12(B)(6) motion to dismiss.[1]

As an initial matter, Fedorov did not argue that he needed additional discovery to address the issue of whether the Tort Reform Statutes bar recovery in this case and Magistrate Morgan did not indicate what facts she were necessary for a "fully developed record" from which the issue can be decided. *See* Report and Recommendation at p. 11. Magistrate Morgan was presented with the relevant pleadings from the Zada Litigation and documents (including a transcript) from the hearing that lead to the entry of a judgment in that case. No further facts are required to determine this purely legal issue.

Further, Michigan courts routinely decide this issue on a motion to dismiss or with reference to only pleadings and other public records like those presented on the Motion. For example, in *Stanke v Varnum, Ritternig, Schmidt & Howlett, LLP*, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2008 (Docket No. 263446), attached as Exhibit D, the Michigan Court of Appeals upheld an order granting the defendant law firm's motion for summary disposition that the trial court decided without any reference to facts outside of the complaint or court record.

---

[1] Fedorov did not argue that he needed additional discovery to address the issue and Magistrate Morgan did not indicate what facts are necessary for a "fully developed record" from which the issue can be decided. *See* Report and Recommendation at p. 11.

As pled in the complaint in *Stanke,* the defendant-lawyer settled a personal injury case on behalf of a minor, moved for appointment of a conservator and asked to transfer the settlement proceeds to a trust. When the conservator/trustee depleted the settlement proceeds, the minor filed suit against both the conservator/trustee and the lawyer who drafted the trust. The plaintiff obtained a default judgment against the conservator/trustee for the full amount of the funds she wrongfully depleted. The court held that the plaintiff's request for a default judgment for the entire amount of damages barred his subsequent suit against anyone else for those same damages:

> Plaintiff affirmatively represented in its request for entry of default judgment against Stanke that Stanke was responsible for the entire amount of the damages alleged in plaintiff's complaint, together with interest and costs. By this document, plaintiff represented to the court that Stanke was responsible for 100% of the alleged damages and requested that the court enter judgment on that basis. Defendant did not object; therefore, it implicitly agreed. As a result, we find that the parties waived the requirement that the trial court [formerly] allocate fault, as permitted by MCL 600.6304.
>
> Plaintiff affirmatively requested that the court enter judgment against Stanke for the ***full amount*** alleged in its ***complaint***. When the trial court did so, ***there remained no more fault to be apportioned*** to the ***defendant***. Additionally, the doctrine of judicial estoppel prevents a party from taking a subsequent position inconsistent with the position it successfully asserted earlier, where, as here the court accepted the earlier position as true. [*Id.* (Emphasis added)].

In another factually similar case, *K-Mart Corp. v Logan*, unpublished opinion per curiam of the Court of Appeals, issued July 10, 2003, (Docket No. 232393) (attached as Exhibit E) the Michigan Court of Appeals relied solely on the complaint and court record in finding that a plaintiff could not maintain a subsequent action against additional tort feasors when he previously allocated all of his damages to that other party. In *K-Mart Corp.,* Michael Garzonni, a former real estate lawyer for K-Mart, was convicted of embezzlement and ordered to pay restitution to K-Mart. When K-Mart sued the members of Garzonni's family for fraud, unjust

945632 / 13643-0001                                             11

enrichment and civil conspiracy, the defendants moved for a declaratory judgment under MCL 600.2956 that required liability to be several and not joint. The K-Mart court went further and held that the abolition of joint liability required dismissal of the entire subsequent action because all liability had been previously apportioned to the embezzler:

> Pursuant to MCR 7.215(I), we must follow [*Holton v A+ Insurance Associates, Inc.*, 255 Mich. App. 318; 661 NW2d 248 (2003)] precedent and find that MCL 600.2956 does apply to plaintiff's claims. Accordingly, defendants' liability is several only. Because ***plaintiff has already received a judgment against Michael Garzonni accessing all liability to him for plaintiff's damages, there is no liability to be apportioned among defendants***; therefore, this case must be ***dismissed***. [*Id.* (Emphasis added)].

The reasoning and holdings of both *K-Mart*, and *Stanke,* command the same result here and require no further factual development. Fedorov previously filed a complaint against Zada and the Zada Entities alleging fraud, breach of fiduciary duty and a host of other torts in which he asserted that Zada and the Zada Entities were the "***direct and proximate cause***" of his loss of $60,000,000.00. Furthermore, Fedorov successfully moved the Wayne County Circuit Court for a default judgment against Zada and Zada's Entities for the full 100% amount of his damages. As a matter of law, Fedorov has already allocated 100% of fault to Zada and the Zada Entities and is precluded from seeking a second judgment against Defendants. No additional factual development is warranted and the motion must be granted.

**III.    Magistrate Morgan erred when she determined that MRC 2.112(K) must be followed in federal courts and that Defendants' waived their argument that MRC 2.112(K) is irrelevant to their Motion.**

MCR 2.112(K) is the Michigan Court Rule that implements the Tort Reform Statutes by setting up a procedure in which a defendant may notify a plaintiff that the defendant believes a non-party shares in the fault at issue in the plaintiff's case. In opposing the Motion, Fedorov argued that Defendants could not make their argument that Fedorov's claims were barred,

because Defendants did not serve a notice under MCR 2.112(K) in the instant case. The argument was nonsense for two cogent reasons, the first of which escaped Magistrate Morgan and the second of which she got wrong.

First, Defendants are not arguing that fault must be allocated to a non-party *in this case.* Rather, Defendants are relying on the fact that Fedorov already allocated the entire fault for his involvement in the (alleged) Zada Ponzi scheme to Zada in the Zada Litigation. MCR 2.112(K) therefore is utterly irrelevant to Defendants' argument that Fedorov cannot allocate the entire fault for his injuries against Zada in one case and then attempt to allocate fault for those damages injuries against Defendants in this case. Fedorov is bound by his prior actions and the advice of his counsel in the Zada Litigation.

Second, MCR 2.112(K) is a state court rule of procedure. It does not apply to actions pending in federal court. *Dresser v. Cradle of Hope Adoption Center, Inc.*, 421 F. Supp. 2d 1024, 1028 (E.D. Mich. 2006), citations omitted. Rather, in a case pending in federal court, a defendant may preserve its substantive rights under the Tort Reform Statutes by pleading an appropriate affirmative defense under Rule 8(c). *Id.* Although other federal courts have found that the MCR 2.112(K) does apply in diversity cases, Magistrate Morgan did not discuss why a state court rule binds a federal court, other than to note generally (and incorrectly) that the court rule was a "necessary" component of the fair share liability regime. The court rule merely sets forth the time periods in which a defendant must give notice that the defendant seeks to hold a non-party at fault for the case and in which a plaintiff must amend his complaint in light of the notice. As the *Dresser* court determined, a plaintiff can have adequate notice of a defendant's intent to seek to hold a non-party at fault by way of an affirmative defense under Rule 8(c). Moreover, a federal court's Rule 16 scheduling order can set time frames by which additional

parties may be named. There is nothing "necessary" in MCR 2.112(K) to the substantive rights in the Tort Reform Statutes that cannot be adequately addressed by the Federal Rules of Civil Procedure.

Indeed, notice under the federal rules satisfies due process, allows for the implementation of the substantive laws of Michigan but does not dictate a federal court's pre-trial management of its diversity cases. If MCR 2.112(K) did apply in federal courts, no judge hearing a diversity case could allow less than 180-day discovery period, because a defendant has 91 days in which to name non-parties at fault under MCR 2.112(K). *See* MCR 2.112(K)(3)(c). A plaintiff then has 91 days in which to decide whether to include that party. *See* MCR 2.112(K)(4). Thus, if federal courts sitting in diversity were bound by MCR 2.112(K), the parties would not even be determined for 180 days after a defendant files its first responsive pleading.[2] Simply put, a determination that MCR 2.112(K) applies in federal diversity cases would deprive a federal district court of the exclusive right to control its docket. *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). Because the Tort Reform Statutes can be fairly implemented without imposing undue restrictions on a federal court's docket, there is no justification for applying this state court rule of procedure in a federal court.

Magistrate Morgan erroneously found that Defendants waived this argument because they filed a MCR 2.112(K) notice after the motion was filed but before the motion was heard.[3] *See* Report at pp. 9 – 10. MCR 2.112(K) is used to notify plaintiffs in the pending case that a

---

[2] If Fedorov is correct and the notice requirements in MCR 2.112(K) are triggered by an answer, only, and not by a Rule 12 motion, then a federal judge hearing a diversity case would be forced to hold discovery open for at least a year in most cases.

[3] Defendants filed the notice 91 days after they filed their first responsive pleading, as set forth in MCR 2.112(K). Ironically, Magistrate Morgan found that this action constituted a "waiver" of the argument that the rule does not apply in federal courts and found that the rule does apply in federal courts. Thus, if Defendants had not filed an MCR 2.112(K) notice (which was done solely out of an abundance of caution), under Magistrate Morgan's ruling Defendants would have been barred from seeking to allocate fault to non-parties. Magistrate Morgan's ruling created an unfair choice for Defendants: if you file a notice, then you have waived the argument that the rule does not apply; if you do not file, you have waived the right to argue non-parties are at fault.

defendant fault should be allocated to non-parties. In the Motion, Defendants argued that Fedorov already allocated fault in a ***prior*** case. MCR 2.112(K) is utterly irrelevant to the question of whether Fedorov's prior litigation strategy precludes him from bringing suit against these Defendants. The issue is both a red herring and was wrongly decided.

### IV.    The Doctrine of Judicial Estoppel Precludes Fedorov from Maintaining the Instant Suit Against Defendants.

Under the judicial estoppel doctrine, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. *Paschke v Retool Industries*, 445 Mich. 502, 509-510; 519 NW2d 441 (1994). More specifically, "[j]udicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Ford Motor Co. v Public Service Comm.*, 221 Mich. App. 370, 382; 562 NW2d 224 (1997). The doctrine "is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Opland v Kiesgan*, 234 Mich. App. 352, 364; 594 N.W.2d 505 (1999), quoting *Levinson v United States*, 969 F.2d 260, 264 (CA 7, 1992). As our Supreme Court has observed, "judicial estoppel is widely viewed as a tool to be used by the courts in impeding those litigants who would otherwise play 'fast and lose' with the legal system." *Paschke, supra,* at 509.

In this case, the judgment Fedorov obtained in the prior action did not involve some routine matter of pretrial procedure, but instead was the most significant Order available in the judicial system: a judgment. It was Fedorov who moved for a default judgment. It was Fedorov who argued that the court should enter a default judgment, and only after the court entertained oral argument did it enter the default judgment against Zada and the Zada Entities in Fedorov's favor.

As stated above, Fedorov previously alleged and convinced the Wayne County Circuit Court that Zada and the Zada Entities were "***the direct and proximate cause***" of his loss of $60,000,000.00. Based on his allegations and representations to the Wayne County Circuit Court, Fedorov succeeded in obtaining a default judgment against Zada and the Zada Entities for the full and 100% amount of his loss. As the Michigan Supreme Court held and clarified in *Robinson v City of Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000), the phrase "the proximate cause" means "the one most immediate, efficient, and direct cause preceding an injury." So, in plain English, Fedorov successfully convinced Judge MacDonald that Zada and the Zada Entities were the *only* parties who were at fault or otherwise *caused* his loss. At no time during the Wayne County Circuit Court proceedings did Fedorov ever allege that Hyman Lippitt, P.C., Doug Hyman, Norman Lippitt or Brian O'Keefe were liable along with Zada and the Zada Entities for his alleged loss of $60,000,000.00.

In the instant case and in complete contradiction to his successful assertions before the Wayne County Circuit Court, Fedorov is claiming that the instant Defendants are the "***direct and proximate cause***" of his $60,000,000.00 loss. Given that Fedorov successfully maintained his position that Zada and the Zada Entities were 100% responsible for his $60,000,000.00 loss in the Wayne County Circuit Court, he is precluded under the doctrine of judicial estoppel from coming before this Court and claiming the exact opposite - that the instant Defendants are the "direct and proximate cause" of his $60,000,000.00 loss.

To reiterate, *Robinson, supra*, holds and that the phrase "the proximate cause", means only one direct cause of harm—not more than one. In this case, Fedorov already alleged successfully that Zada was "the one most immediate, efficient, and direct cause preceding [his]

945632 / 13643-0001                                16

injury." *Id.* At 562.  The doctrine of judicial estoppel mandates that the instant case against Defendants be dismissed with prejudice.

## CONCLUSION

For all the foregoing reasons, Defendants Hyman Lippitt, P.C. Douglas Hyman, Norman Lippitt and Brian O'Keefe respectfully request that this Honorable Court enter an order overruling Magistrate Morgan's May 7, 2010 Report and Recommendation and entering an order dismissing this case, with prejudice, under Rule 12(b)(6).

Respectfully submitted,

MADDIN, HAUSER, WARTELL
ROTH & HELLER, P.C.

BY: */s/ Kathleen H. Klaus*
    Kathleen H. Klaus (P67207)
    Harvey R. Heller (P27351)
    Steven M. Wolock (P38497)
    Attorneys for Defendants
    28400 Northwestern Hwy, 3rd Floor
    Southfield, MI 48034
    (248) 359-7520

ZAUSMER, KAUFMAN, AUGUST
  CALDWELL & TAYLER, P.C.
By:  RICHARD C. KAUFMAN (P27853)
Attorney for Defendants
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
(248) 851-4111

DATED:     May 21, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2010, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: all counsel of record.

/s/ Kathleen H. Klaus
Kathleen H. Klaus (P67207)
Attorney for Defendant
28400 Northwestern Highway, 3rd Floor
Southfield, MI 48034
(248) 359-7520